ATTORNEYS FOR APPELLANTS
Caroline B. Briggs
John K. Morris
Lafayette, Indiana

ATTORNEY FOR APPELLEE
The Bar Plan Mutual Ins. Co.
Philip E. Kalamaros
Hunt Suedhoff Kalamaros LLP
St. Joseph, Michigan

ATTORNEYS FOR AMICI CURIAE
Defense Trial Counsel of Indiana
Donald B. Kite, Sr.
Dean-Webster, Wright & Kite LLP
Indianapolis, Indiana

James D. Johnson
Rudolph Fine Porter & Johnson LLP
Evansville, Indiana

Insurance Institute of Indiana
Karl L. Mulvaney
Barry C. Cope
Bingham McHale, LLP
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S04-1011-CV-635

MICHAEL ASHBY AND
RANDY O'BRIEN,                                          *Appellants (Plaintiffs below),*

v.

THE BAR PLAN MUTUAL INSURANCE COMPANY AND
C. BRUCE DAVIDSON, JR.,                        *Appellees (Defendants below).*

Appeal from the Marion Superior Court
No. 49D05-0504-CT-014786, 49D05-0504-PL-014864, 49D12-0504-CT-014786, 49D12-0504-PL-014864, 49D13-0601-CT-003817, 49D14-0504-CT-014786
The Honorable Robyn L. Moberly, Judge

On Transfer from the Indiana Court of Appeals, No. 49A04-0910-CV-569

**June 21, 2011**

**Dickson, Justice.**

This appeal challenges the grant of summary judgment in favor of an insurance company seeking a declaration of no professional liability coverage for claims brought against its insured

attorney who abandoned his law practice, was disbarred, and did not report the claims to the company. We reverse the summary judgment.

Briefly summarized, the pertinent designated materials indicate the following sequence of events. The plaintiffs, Michael Ashby and Randy O'Brien each retained attorney C. Bruce Davidson to represent them in damage actions arising out of alleged attacks upon Ashby (on September 11, 2000) and O'Brien (on January 14, 2001) by fellow inmates during incarceration at Indiana Department of Correction facilities. O'Brien retained Davidson to represent him on August 1, 2001, and on January 7, 2003, Davidson filed a complaint on behalf of O'Brien. It was dismissed, however, on August 5, 2003, due to Davidson's repeated failure to conform to court orders. Davidson began representing Ashby about May 9, 2002, but never filed any action on his behalf before the statute of limitation expired in September 2002. Davidson applied for professional liability insurance coverage from The Bar Plan Mutual Insurance Company ("Bar Plan") on March 18, 2003, but did not disclose any potential claims from Ashby or O'Brien. Davidson's application indicated that he had no "knowledge of any incident, circumstance, act, error or omission which may give rise to a [professional liability] claim." Appellant's App'x at 565. Bar Plan issued its professional liability "claims made" policy designating the policy period as "Effective: 03/20/2003" and "Expiration: 03/20/2004." *Id.* at 568. By special "Retro-Date Exclusion" endorsements, the policy further declared that the policy "does not apply" to claims "arising out of any act, error or omission" of Davidson "occurring prior to 03/20/2001." *Id.* at 569–70. Bar Plan explains the endorsements as "providing coverage for claims made from March 20, 2001 to March 20, 2003." Appellee's Br. at 4.

Beginning February 26, 2004, in a series of attorney discipline actions, Davidson was first suspended and eventually disbarred from the practice of law due to his abandonment of law practice starting November 2003 and his accompanying failure to complete work for clients, his failure to keep them informed or take reasonable steps to protect their interests, and his theft or conversion of legal fees paid to him. Matter of Davidson, 814 N.E.2d 266 (Ind. 2004). Davidson filed for bankruptcy on November 10, 2004. Neither Ashby nor O'Brien ever notified Davidson of their professional malpractice claims against him, and both contend that Davidson's whereabouts was unknown, resulting in their presenting their claims directly to Bar Plan.

2

O'Brien, with assistance of counsel, by letter to Bar Plan dated February 10, 2004, asserted his claim against Davidson. Bar Plan acknowledged the letter, notifying O'Brien's attorney that "The Bar Plan is the professional liability carrier for C. Bruce Davidson," that Bar Plan would "be investigating this matter," requesting "detailed review of your client's claim against Mr. Davidson," and advising the "Claim No." assigned to the case. Appellant's App'x at 815. On March 15, 2004, Ashby wrote directly to Bar Plan and asserted his claim against Davidson, and on March 23, 2004, Bar Plan acknowledged Ashby's claim against Davidson, providing the "Claim No.," and requesting "information regarding the nature of this claim." *Id.* at 818.

Separate actions for damages were filed against Davidson on behalf of Ashby and O'Brien on April 19, 2005.[1] The actions were eventually consolidated and Bar Plan intervened and asserted a cross-claim seeking declaratory relief establishing that it is not obligated to indemnify Davidson for the claims of Ashby and O'Brien. The grounds presented by Bar Plan in support of its subsequent motion for summary judgment, to the extent they are also presented on appeal, include: (a) its unambiguous policy language establishes that, as a condition precedent to coverage, Davidson was required to provide written notification to Bar Plan within twenty days of any claim and that he failed to notify Bar Plan of any claims; and (b) Davidson failed to comply with the insurance policy's requirement that he assist and cooperate with Bar Plan.[2] Ashby and O'Brien disputed Bar Plan's assertions and emphasized that they each had provided timely, actual, written notice of a claim against Davidson directly to Bar Plan; that Bar Plan should be estopped from insisting upon strict, technical compliance with the policy provisions; and that Bar Plan failed to act in good faith in its interactions with the plaintiffs. After considerable additional litigation, the trial court on June 7, 2009, granted summary judgment in favor of Bar Plan against Ashby and O'Brien, with the court declaring the ruling to be "a final and an appealable order as to The Bar Plan." *Id.* at 17. The judgment did not include any findings of fact or conclusions of law. The Court of Appeals reversed, concluding that the purposes of the claim

---

[1] The trial court proceedings also included a professional malpractice action brought against Davidson by Sheila (Dotson) Hurrigan, but she is not a party in this appeal.

[2] Supporting its motion for summary judgment in the trial court, Bar Plan also argued that the issue of coverage is moot because O'Brien's lawsuit against Davidson lacked substantive merit and Ashby's action against Davidson was barred by the two-year statute of limitation. Because these contentions are not reflected in the trial court judgment nor asserted in Bar Plan's appellee's brief on appeal, we deem them abandoned as grounds for summary judgment.

and notice provisions were fulfilled by the plaintiffs providing actual notice to Bar Plan. <u>Ashby v. Davidson</u>, 930 N.E.2d 53 (Ind. Ct. App. 2010). We granted transfer.

Upon appellate review of summary judgment, we use the same standard as the trial court: "summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party." <u>Sheehan Constr. Co. v. Cont'l Cas. Co.</u>, 938 N.E.2d 685, 688 (Ind. 2010) (internal citations omitted). Only after the moving party satisfies its burden to show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law does the burden shift to the non-moving party to demonstrate the existence of a genuine determinative factual issue. <u>Dreaded, Inc. v. St. Paul Guardian Ins. Co.</u>, 904 N.E.2d 1267, 1270 (Ind. 2009).

Challenging the summary judgment on appeal, Ashby and O'Brien primarily assert, as they did at trial, that the doctrines of waiver and estoppel preclude Bar Plan from asserting Davidson's failure to satisfy the Bar Plan policy requirements.

**1. Coverage**

The basic premise of Bar Plan's quest for summary judgment is that its policy provides no coverage for the claims of Ashby and O'Brien because it received no notice in accordance with the nature and terms of its professional liability coverage policy protecting Davidson.

Among the Bar Plan policy contract provisions, the following terms are central to this dispute. The policy's basic insuring agreement, presented in Section II - COVERAGE, provides:

A. PROFESSIONAL LIABILITY AND CLAIMS MADE AND REPORTED CLAUSE:

The Company will pay on behalf of an Insured all sums, subject to the Limit(s) of Liability, Exclusions and terms and conditions contained in this Policy; which an Insured shall become legally obligated to pay as Damages as a result

4

of CLAIMS (INCLUDING CLAIMS FOR PERSONAL INJURY) FIRST MADE AGAINST AN INSURED DURING THE POLICY PERIOD AND REPORTED TO THE COMPANY DURING THE POLICY PERIOD by reason of any act or omission by an Insured acting in a professional capacity providing Legal Services.

* * *

Note: It is a condition precedent to coverage under this Policy that all Claims be reported in compliance with Section VII., CLAIMS, Paragraph A.

Appellant's App'x at 550. Section VII - CLAIMS, delineating the reporting requirement and emphasizing that it is a condition precedent, states:

As a condition precedent to the coverage provided by this Policy, an Insured shall, within twenty (20) days of the date any Claim is first made against that Insured, give written notice of that Claim to the Company.

In the event suit is brought against an Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received directly or by the Insured's representatives.

*Id.* at 559. Within Section I - DEFINITIONS, the policy states that "Insured" is defined as,

1. Any Named Insured;

* * *

4. The heirs, executors, administrators, beneficiaries, assigns, appointed legal representatives, guardians and conservators of an Insured who is dead, disabled or incapacitated, and the trustee or estate of an Insured in bankruptcy, but solely with respect to such liability of the Insured as is otherwise covered by this Policy;

* * *

*Id.* at 548. The policy defines a "Claim" as, "Receipt by an Insured of a demand for money or services (including the service of suit or the institution of arbitration proceedings) against the Insured from one other than that Insured." *Id.*

Davidson was not obligated by any statute or rule to purchase insurance coverage to protect his clients. Nor was he compelled to obtain professional liability insurance coverage for his own protection. But he elected to purchase the Bar Plan policy to obtain coverage to protect himself in the event of any professional liability claims against him. Nothing in the policy language imposes upon Bar Plan any obligation to indemnify Davidson's clients against their losses. The policy was solely for Davidson's protection against professional liability claims, and its

5

terms made it clear that coverage could be triggered only by its insured, Davidson, notifying Bar Plan and seeking it to defend and, if necessary, indemnify Davidson from loss arising from Ashby's or O'Brien's claims.

Neither Ashby nor O'Brien ever informed Davidson of any professional malpractice claim against him, and Davidson did not provide notification to Bar Plan of any such claim. Davidson purchased the policy to provide himself with protection against professional liability claims. It remained his choice as to whether to activate the available coverage protection. As expressed in Paint Shuttle, Inc. v. Cont'l Cas. Co., "[t]he notice provision of a 'claims made' policy is not simply the part of the insured's duty to cooperate, it defines the limits of the insurer's obligation. If the insured does not give notice within the contractually required time period, there is simply no coverage under the policy." 733 N.E.2d 513, 522 (Ind. Ct. App. 2000) (internal citations omitted). We hold that Bar Plan has established that there are no genuine issues of fact as to Davidson's failure to comply with the policy's condition precedent requiring personal written notice of a claim, but this is not dispositive because Ashby and O'Brien oppose summary judgment on grounds of waiver and estoppel notwithstanding the potential lack of coverage.

## 2. Estoppel

Ashby and O'Brien also assert waiver and estoppel to oppose summary judgment, claiming that the affirmative actions of Bar Plan preclude it from denying coverage based upon Davidson's failure to provide notice or to cooperate.

When Bar Plan received letters from Ashby and O'Brien's lawyer advising of their legal malpractice claims against Davidson, Bar Plan responded in writing, acknowledging their claims, showing claim numbers had been assigned, and requesting additional information and documentation for the claims. Acknowledging O'Brien's claim, Bar Plan on February 12, 2004, expressly confirmed that it was Davidson's professional liability carrier, advised that it would be investigating, and requested a "detailed review of your client's claim against Mr. Davidson." Appellant's App'x at 815. In its March 23, 2004, acknowledgment of Ashby's notification of a claim, Bar Plan advised Ashby that it does not provide coverage for the recovery of any fees and ex-

6

penses Ashby paid to Davidson, but the letter does not exclude or even suggest the possible exclusion of coverage for other damages. In its letter of April 1, 2004, the Bar Plan representative wrote to Ashby declaring, "I am more than willing to work with either you, or your attorney to resolve your claim against Mr. Davidson. I understand that your claim is for the loss of your right to bring suit against the Department of Corrections." *Id.* at 821. Bar Plan makes no claim to have sent Ashby, O'Brien, or their counsel any "reservation of rights" letter explaining that there was a coverage question and cautioning that Bar Plan's inquires and actions should not be construed as an acceptance of coverage or admission of liability. As requested, Ashby and O'Brien continued to provide information to Bar Plan in an attempt to resolve their claims. In October 2005, Bar Plan asserted its claim of non-coverage with the filing of its cross-counter claim for declaratory judgment. *Id.* at 129.

The terms "estoppel" and "waiver" ordinarily have distinct and separate meanings, but "estoppel" is often used synonymously with "implied waiver." Tate v. Secura Ins., 587 N.E.2d 665, 671 (Ind. 1992).

> Technically, there is a distinction between "waiver" and "estoppel." A waiver is an intentional relinquishment of a known right and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question and a consequent change of position to his detriment. But in the law of insurance, the distinction between "estoppel" and "implied waiver" is not easy to preserve, and, quite commonly, in insurance cases, the courts have found it unnecessary or inadvisable to make a distinction between them and have used the terms interchangeably.

*Id.* (quoting Travelers Ins. Co. v. Eviston, 110 Ind. App. 143, 154, 37 N.E.2d 310, 314 (1941)). In describing the doctrine of estoppel, this Court has explained, "[a]lthough variously defined, it is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct." Brown v. Branch, 758 N.E.2d 48, 51–52 (Ind. 2001). Further, "one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Id.* at 52.

In the present case, Bar Plan sent written communications to Ashby and O'Brien imply-

ing the existence of coverage by providing conventional treatment of their claims by assigning a claim number, seeking further information from the claimants, and inviting further negotiations to work "to resolve your claim." Appellant's App'x at 821. Conspicuously absent was any caution about possible non-coverage due to the absence of written notice from Davidson, the insured. From the designated materials, we find genuine issues of fact as to whether Ashby and O'Brien, and their counsel, were misled to believe that Bar Plan provided professional liability coverage for Davidson with respect to their claims.

As to detrimental reliance on Bar Plan's representations of coverage, the issue is whether Ashby or O'Brien sustained a resulting change of position to their detriment. We first note a reasonable argument may be made that the notices of claims against Davidson sent directly to Bar Plan from O'Brien's attorney and from Ashby operated to satisfy the policy's general requirement that claims must be "first made against an insured during the policy period and reported to the company during the policy period." Policy Section II, Paragraph A, Appellant's App'x at 550. Even if we assume compliance with this policy requirement, there is the additional explicit condition precedent requiring that within twenty days of the insured receiving a demand against him for money or services, he must give written notice to Bar Plan. Policy Section VII, Paragraph A, Appellant's App'x at 559. In order to entitle Ashby or O'Brien to summary judgment in their favor on the issue of detrimental reliance, the designated materials must establish that, if Bar Plan's initial responses had disclosed their coverage defenses, Ashby and O'Brien would have been able to locate Davidson and persuade him to provide written notification to Bar Plan within twenty days of Davidson's first learning of Ashby's and O'Brien's professional liability claims against him. But this fact is neither conclusively established nor disproved by the designated evidence. It remains an issue for resolution at trial, thus precluding summary judgment in favor of any of the parties on the issue of detrimental reliance.

The summary judgment materials show that genuine issues of material fact remain as to whether Bar Plan should be estopped from asserting lack of notice and non-cooperation as grounds for denying coverage for the claims of Ashby and O'Brien. As the party seeking summary judgment, Bar Plan has thus failed to establish the absence of factual issues so as to entitle it to judgment as a matter of law.

8

## Conclusion

We hold as a matter of law that the claims-made professional liability insurance policy purchased from Bar Plan by Davidson for his protection provided no coverage without Davidson's compliance with the policy's condition precedent requiring a personal written notice from him to the company within twenty days of his receiving a claim.  As to the issue of estoppel, however, we hold that genuine issues of fact remain regarding whether Bar Plan's misrepresentation of valid coverage resulted in Ashby or O'Brien sustaining actual detriment.  The trial court's grant of summary judgment to Bar Plan against Ashby and O'Brien is reversed, and this cause is remanded for further proceedings.

Shepard, C.J., and Sullivan, Rucker, and David, JJ., concur.